**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ANNE MARIE TARDI-OSTERHOUDT,

                                 Plaintiff,                  1:18-cv-00840 (BKS/CFH)

v.

McCABE, WEISBERG & CONWAY LLC; SAHAR
HAMLANI, ESQ.; OCWEN LOAN SERVICING, LLC;
DEUTSCHE BANK NATIONAL TRUST COMPANY, as
Trustee for the Registered Holder of Morgan Stanley ABS
Capital I Inc. Trust 2007-HE1 Mortgage Pass-Through
Certificates, Series 2007-HE1; and DOES 1 through 10
inclusive,

                                 Defendants.

_____

**Appearances:**

*Plaintiff pro se:*

Anne Marie Tardi-Osterhoudt
Clintondale, NY 12515

*For Defendants Ocwen Loan Servicing LLC and Deutsche Bank National Trust Company, as*
*Trustee for the Registered Holder of Morgan Stanley ABS Capital I Inc. Trust 2007-HE1*
*Mortgage Pass-Through Certificates, Series 2007-HE1:*

Patrick G. Broderick
Ryan Sirianni
Greenberg Traurig, LLP
200 Park Avenue, 39th Floor
New York, NY 10166

*For Defendants McCabe, Weisberg & Conway, LLC and Sahar Hamlani:*

Melissa DiCerbo
McCabe, Weisberg & Conway, LLC
145 Huguenot Street, Suite 210
New Rochelle, NY 10801

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

Plaintiff pro se Anne Marie Tardi-Osterhoudt brings this action against Defendants McCabe, Weisberg & Conway, LLC ("McCabe"), Sahar Hamlani (together with McCabe, the "McCabe Defendants"), Ocwen Loan Servicing LLC ("Ocwen"), and Deutsche Bank National Trust Company, as Trustee for the Registered Holder of Morgan Stanley ABS Capital I Inc. Trust 2007-HE1 Mortgage Pass-Through Certificates, Series 2007-HE1 ("Deutsche Bank"), alleging that they engaged in unlawful credit collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692c(a)–(b), 1692e, 1692g(b). (Dkt. No. 1, ¶¶ 65–69). She seeks $587,191.02 in damages. (*Id.* ¶ 71). Defendants Ocwen and Deutsche Bank have moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 13). The McCabe Defendants have moved for dismissal under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. (Dkt. No. 15). For the reasons set forth below, Defendants Ocwen and Deutsche Bank's motion to dismiss is granted. The McCabe Defendants' motion for summary judgment is granted in part and denied in part.

## II.     DEFENDANTS OCWEN AND DEUTSCHE BANK'S MOTION TO DISMISS

### A.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's

2

favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court "liberally construe[s] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (citations and internal quotation marks omitted). "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Although the court is "obligated to draw the most favorable inferences" that a plaintiff s complaint supports, the court "cannot invent factual allegations that he has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). The pleadings must still contain factual allegations that raise a "right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B.  Plaintiff's Allegations[1]

Plaintiff and her husband, Reginald Osterhoudt, own property at 40 Sunnybrook Circle in Highland, New York. (Dkt. No. 1, ¶ 15). On June 23, 2006, the Osterhoudts borrowed money from New Century Mortgage Corporation ("New Century").[2] (*Id.* ¶¶ 13, 14). The loan, in the

---

[1] The allegations are taken from the Complaint. The Court will assume the truth of, and draw reasonable inferences from, those well-pleaded allegations that are nonconclusory and factual. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). The recitation of any one allegation below is not a determination that it meets that standard.

[2] According to the Complaint, New Century filed for bankruptcy on April 2, 2007 and liquidated its assets on August 1, 2008. (*Id.* ¶ 25).

principal amount of $165,600, was memorialized in a note and secured by a mortgage on the property. (*Id.* ¶¶ 14, 15). The "planned path of the Plaintiff's Note" was for the note to be acquired and pooled with other mortgage notes in a trust created for that purpose—the Morgan Stanley ABS Capital I Inc. Trust 2007-HE1 (the "Pass-Through Trust").[3] (*Id.* ¶ 18). Under this "plan," third-party investors would receive "pass-through certificates" giving them beneficial ownership in the trust-held assets, but the trustee would hold legal title to assets. (*See id.* ¶¶ 16–18).

Plaintiff asserts, however, that the "actual path of Plaintiff's Note" did not follow that plan; the "Note was *not* deposited into the Pass-Through Trust by any Pooling and Servicing Agreement . . . , by any signature pages by Deutsche Bank as Trustee of the Pass-Through Trust, by any express Mortgage Loan Purchase Agreement, or reflected in any documents uploaded to the [Securities and Exchange Commission ('SEC')] website, or any mortgage loan schedules, if any." (*Id.* ¶ 19). She claims that, instead, a "nameless" investor "invested in the Note, became creditor, and appointed . . . a servicer/custodian, ultimately Ocwen." (*Id.* ¶ 20). She further alleges that "New Century immediately lodged Plaintiff's Note with a trustee ('Intermediate Trustee') in an irrevocable trust ('Intermediate Trust') for the benefit of the investor," and that the "Intermediate Trust provided for transferring Plaintiff's Note to the Pass-Through Trust in the event of Plaintiff's default on her Note." (*Id.* ¶ 21). According to Plaintiff, the "Intermediate Trust was only designed to hold Plaintiff's Note so long as it [was] a performing asset," while

---

[3] SEC filings for that entity are located at https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001385840&owner=exclude&count=40&hidefilings=0. On a Rule 12(b)(6) motion, a district court may take judicial notice of the contents of SEC filings—not for their truth but for the fact of their existence. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 355 n.5 (2d Cir. 2010); *Paulsen v. Stifel, Nicolaus & Co.*, No. 18-cv-9440, 2019 WL 2415213, at *3, 2019 U.S. Dist. LEXIS 95447, at *9 (S.D.N.Y. June 4, 2019) ("Courts in this Circuit have routinely taken notice of public disclosure documents filed with the SEC that are proffered as part of motion to dismiss.").

the Pass-Through Trust "was designed as a separate business for Deutsche Bank to receive and collect defaulted debt . . . from the Intermediate Trust." (*Id.* ¶ 29). Plaintiff further alleges that "Deutsche Bank is merely operating as a conduit for a post-default collection process that the investor controls" and that "Ocwen was and is concealing the investor's name and interest in the debt" because the "investor's business policy is to remain hidden in any chain of title." (*Id.* ¶¶ 32–33).

Plaintiff failed to make the payment due on March 1, 2017 and failed to make any subsequent payments to bring the loan current. (*Id.* ¶ 22). She alleges that Deutsche Bank "received and acquired the defaulted debt between March 2, 2017 and March 17, 2017," that "the right to collect for Deutsche Bank was then transferred to Ocwen," and that "Ocwen then began collecting the debt for Deutsche Bank." (*Id.* ¶ 23 (emphases and footnotes omitted)). She further asserts that "Ocwen then hired the McCabe Firm which subsequently acquired the defaulted debt and began collecting it on behalf of Deutsche Bank on or before March 17, 2017." (*Id.*).

Every month starting on July 17, 2017, Ocwen "regularly mailed Plaintiff monthly statements" specifying the amount due and indicating that: "[t]his communication is from a debt collector attempting to collect a debt"; Plaintiff's loan was accelerated; payment must be sent to Ocwen by certified funds; and "[f]ailure to bring your loan current may result in fees and foreclosure—the loss of your home." (*Id.* ¶ 41).

McCabe mailed Plaintiff a letter, dated July 19, 2017, stating that McCabe was a debt collector "retained in connection with the debt identified in this notice." (*Id.* ¶ 42). The notice specified: (1) the amount of the debt due as of July 17, 2017; (2) the name of the creditor (Deutsche Bank as trustee for the registered holder of pass-through certificates); (3) McCabe's assumption that the debt was valid unless Plaintiff disputed it within 30 days; (4) Plaintiff's right

to dispute and seek verification of the debt by sending a request within 30 days; (5) Plaintiff's right to obtain the name of the original creditor by sending a written inquiry within 30 days; (6) McCabe's address; (7) notification that the notice was an attempt to collect a debt and that any information obtained would be used for that purpose; and (8) the possibility of additional rights under "state or other applicable law, including but not limited to bankruptcy law." (*Id.*). On July 28, 2017, Plaintiff sent McCabe a notice of dispute, which disputed the debt and requested validation. (*Id.* ¶ 45). Plaintiff claims that "Defendants never responded to the Notice of Dispute with validation or the information requested." (*Id.* ¶ 46).

On August 25, 2017, McCabe recorded an assignment of mortgage (the "AOM") from New Century to Deutsche Bank with the Ulster County Clerk. (*Id.* ¶ 24). The AOM, which was dated August 11, 2017 and executed by "New Century Mortgage Corporation by its attorney in fact Ocwen Loan Servicing, LLC," specified that the mortgage secured Plaintiff's "original principal sum of $165,600.00 with interest." (*Id.*). The AOM included the name of Plaintiff and her husband and information about Plaintiff's property. (*Id.* ¶ 48). It further indicated at the top left: "Recording Requested By: OCWEN LOAN SERVICING, LLC" and "Record and Return to: McCabe, Weisberg & Conway." (*Id.*).

On November 20, 2017, the McCabe Defendants contacted the Ulster County Clerk and transmitted Plaintiff's name and address, as well as information regarding the debt, stating that the Osterhoudts defaulted on their debt, which became due on March 1, 2017, and left an unpaid principal balance of $137,191.02 due and owing to Deutsche Bank. (*Id.* ¶ 53).

### C.    Discussion

Generally, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may not consider material extraneous to the complaint unless it is "attached to the complaint as an exhibit or incorporated in it by reference." *Chambers v. Time Warner, Inc.*,

282 F.3d 147, 153 (2d Cir. 2002). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). A plaintiff's "*reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153. The issue typically arises where the extraneous material is a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

Defendants Ocwen and Deutsche Bank have attached to their motion to dismiss a "Pooling and Servicing Agreement" (the "PSA"), dated January 1, 2007, among various parties, including Morgan Stanley ABS Capital I Inc. as depositor and Deutsche Bank as trustee. (*See* Dkt. No. 13-4). They ask the Court to take judicial notice of the PSA as a publicly accessible document required to be filed with the SEC and argue that the Court may consider the PSA because it is "integral" to the Complaint. (Dkt. No. 13-1, at 6–7 n.2). Quoting a section of the PSA providing that the depositor "hereby sells, transfers, assigns, sets over and otherwise conveys" to Deutsche Bank as trustee "all the right, title and interest of the Depositor in and to the Trust Fund," (Dkt. No. 13-4, at 75), they argue that Deutsche Bank now owns and holds the Osterhoudts' mortgage loan, (Dkt. No. 13-1, at 6). Even though the PSA was filed with the SEC, (*see supra* note 3 (listing link to SEC website)), the Court cannot consider its content for their

truth, *see In re Morgan Stanley*, 592 F.3d at 355 n.5. Further, Defendants have not persuasively

shown that Plaintiff "rel[ied] on the terms and effect" of the PSA in drafting her Complaint.

*Chambers*, 282 F.3d at 153 (emphasis omitted). Therefore, the Court cannot consider the PSA

for the proposition asserted by Defendants Ocwen and Deutsche Bank. In resolving their motions

to dismiss, the Court will confine its analysis to the Complaint itself.

### 1.    Claim Against Deutsche Bank

Plaintiff claims that Deutsche Bank, along with the other Defendants, violated § 1692e—

which prohibits the use of "any false, deceptive, or misleading representation or means in

connection with the collection of any debt," 15 U.S.C. § 1692e—because it "pursu[ed] collection

of the debt while attempting to evade the Plaintiff's right [under § 1692g(a)(2)] to the name of

the creditor to whom the debt is owed."[4] (Dkt. No. 1, ¶ 68). Under Plaintiff's theory, Deutsche

Bank is not a "creditor" under the FDCPA because it "received an assignment or transfer of the

debt in default solely for the purpose of facilitating collection of such debt for another, the

unnamed investor." (*Id.* ¶ 37). Based on this view, Plaintiff alleges that "Defendants'

communications within the past year with Plaintiff and third parties," which named Deutsche

Bank as the creditor, were false, deceptive, or misleading.

The FDCPA defines "creditor" as "any person who offers or extends credit creating a

debt or to whom a debt is owed, but such term does not include any person to the extent that he

receives an assignment or transfer of a debt in default solely for the purpose of facilitating

collection of such debt for another." 15 U.S.C. § 1692a(4). By contrast, a "debt collector" is "any

person who uses any instrumentality of interstate commerce or the mails in any business the

---

[4] Plaintiff claims that Defendants violated "particularly but not exclusively § 1692e(10)," (Dkt. No. 1, ¶ 68), which specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10).

principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).[5] Importantly, Plaintiff does not dispute that "Deutsche Bank . . . is the legal owner of the debt and Plaintiff owes the debt to the Trustee, Deutsche Bank." (Dkt. No. 18, at 11). Instead, Plaintiff asserts that Deutsche Bank acquired the debt solely for the purpose of collecting the debt for another. (*Id.*). But even if the Court assumes that Plaintiff has sufficiently alleged that the debt was assigned to Deutsche Bank after default, Plaintiff's claim fails because, as a matter of law, she cannot establish that Deutsche Bank, as trustee, is collecting a debt owed another.

In 2017, the Supreme Court held that a purchaser of debt who seeks to collect the debt for its own account is not a debt collector under the FDCPA. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724, 1721–22, 1726 (2017). In so doing, the Court rejected the argument that a purchaser of defaulted debt "couldn't qualify as a creditor." *See id.* at 1724 ("So a company collecting purchased defaulted debt for its own account . . . would hardly seem to be barred from qualifying as a creditor under the statute's plain terms."). Deutsche Bank, therefore, can qualify as a creditor even it acquired Plaintiff's mortgage after default, so long as it did not seek to collect the debt for another. *See Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16-cv-9945, 2019 WL 2647598, at *8, 2019 U.S. Dist. LEXIS 108025, at *25–26 (S.D.N.Y. June 27, 2019) ("To hold that anyone who attempts to collect on a debt acquired after default violates the FDCPA, even if collecting the debt for his or her own account, would render the words "for another" meaningless, a practice the Court is to avoid.").

---

[5] A "debt collector" also encompasses a "creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Id.*

Plaintiff's contention that a trustee for a mortgage loan trust collects debt owed to the

trust beneficiaries, not to itself, finds no support in the case law. On the contrary, many courts

have held that such a trustee qualifies as a creditor under the FDCPA. In *Johnson-Gellineau*,

Judge Karas addressed a similar situation and explained:

> [W]hen Wells Fargo acts as trustee for the mortgage loan trust, it
> acts on behalf of, or as, the trust itself, and therefore collects the debt
> on its own behalf. That Wells Fargo is a "trustee" does not mean, as
> Plaintiff contends, that it is collecting debt owed to another. Indeed,
> courts frequently find entities acting in the trustee capacity that
> Wells Fargo does here to be creditors under the FDCPA.

2019 WL 2647598, at *7, 2019 U.S. Dist. LEXIS 108025, at *20–21 (citations omitted); *accord,*

*e.g.*, *Houck v. US Bank NA*, No. 15-cv-10042, 2016 WL 5720783, at *9, 2016 U.S. Dist. LEXIS

136033, at *30–31 (S.D.N.Y. Sept. 30, 2016) (determining that US Bank, as trustee for a

mortgage loan trust, was not a debt collector under the FDCPA), *aff'd*, 689 F. App'x 662, 664–

65 (2d Cir. 2017) ("Because the Defendants are 'creditors' seeking to collect debts owed to

them, the district court appropriately concluded that Wells Fargo and U.S. Bank are not 'debt

collectors' within the meaning of the statute."); *Munroe v. Specialized Loan Servicing LLC*, No.

14-cv-1883, 2016 WL 1248818, at *5, 2016 U.S. Dist. LEXIS 40716, at *16 (E.D.N.Y. Mar. 28,

2016) (finding that the Bank of New York, as trustee for a mortgage pass-through trust, was "a

'creditor' not a 'debt collector' under the FDCPA," as it was collecting on behalf of itself).

Similarly, here the Court finds that Deutsche Bank qualifies as a creditor under the facts alleged

by Plaintiff.[6] The Court has considered Plaintiff's arguments to the contrary and finds them without merit. The § 1692e claim against Deutsche Bank is dismissed.[7]

### 2. Claims Against Ocwen

As a threshold matter, Ocwen argues that it is not subject to the FDCPA because it is not a "debt collector" but a mortgage servicer that "obtained" the debt before Plaintiff defaulted. (Dkt. No. 13-1, at 10–12); *see* 15 U.S.C. § 1692a(6)(F) (excluding from the "debt collector" definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person"). Under § 1692a(6)(F), mortgage servicers are "not covered by the FDCPA if the debt at issue was acquired prior to the borrower's default. That is, the FDCPA only covers servicers who obtain a mortgage that is already in default." *Dumont v. Litton Loan Servicing, LP*, No. 12-cv-2677, 2014 WL 815244, at *17, 2014 U.S. Dist. LEXIS 26880, at *64 (S.D.N.Y. Mar. 3, 2014). As Plaintiff must plead Defendants' debt collector status, *see Goldstein*, 374 F.3d at 60, and Plaintiff has failed to allege that Ocwen began servicing her debt after default, the Court agrees that all claims against Ocwen are insufficiently pled.[8]

---

[6] Contrary to Plaintiff's contention, it is her burden to sufficiently plead Defendants' debt collector status. *See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2d Cir. 2004) ("The plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status."); *Rice v. Schaefer*, No. 17-cv-2782, 2018 WL 4688949, at *5–6, 2018 U.S. Dist. LEXIS 167152, at *13–15 (E.D.N.Y. Sept. 27, 2018) (dismissing complaint for failure to sufficiently allege defendants' debt collector status). She has failed to do so here.

[7] Plaintiff claims that Deutsche Bank "may be held vicariously liable for FDCPA violations arising out of [the McCabe Defendants'] communications to the Ulster County clerk." (Dkt. No. 1, ¶ 62). But it is well settled that "a creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 255 (S.D.N.Y. 2008) (internal quotation marks omitted), *aff'd*, 360 F. App'x 255 (2d Cir. 2010).

[8] Given that Ocwen's debt-collector status is insufficiently alleged, Ocwen cannot be held vicariously liable for any violations committed by the McCabe Defendants. *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (holding that it would not "accord with the intent of Congress, as manifested in the terms of the Act, for a company that is *not* a debt collector to be held vicariously liable for a collection suit filing that violates the Act only because the filing attorney is a 'debt collector'").

Nevertheless, because the claims also fail for substantive reasons, the Court will address them in turn below

### a. Section 1692c Claim Against Ocwen

According to Plaintiff, Ocwen, along with McCabe, violated § 1692c(a) and (b) "by communicating, in connection with the collection of the debt, the AOM, to the County clerk and to the public." (Dkt. No. 1, ¶ 66). Plaintiff also alleges that Ocwen communicated with Plaintiff after the default by regularly mailing monthly statements. (*Id.* ¶ 41). In relevant part, § 1692c(a), which concerns communications with the debtor, provides that a debt collector may not "communicate with a consumer in connection with the collection of any debt" at "a time or place known or which should be known to be inconvenient to the consumer" without "the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction." Under § 1692c(b), which concerns communications with third parties, a debt collector may not, except to acquire location information about the consumer, "communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" without "the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy."

It is unclear whether Plaintiff asserts any claim against Ocwen for mailing her monthly statements after July 2017. (*See* Dkt. No 1, ¶ 41; Dkt. No. 18, at 14–16). To the extent Plaintiff argues that Ocwen's monthly statements to her violated § 1692c(a), her claim fails because she

has not alleged any facts from which the Court could infer that the communications were made at an inconvenient time or place.[9]

Next, with regard to the recording of the AOM, Ocwen correctly points out that § 1692c(a) and (b) prohibit communications "in connection with the collection of any debt." (Dkt. No. 13-1, at 12–13). The Court has located no authority for the proposition that recording an assignment of mortgage is a communication in connection with the collection of a debt. A review of the case law suggests a contrary conclusion. *See Araujo v. PennyMac Loan Servs., LLC*, No. 15-cv-62, 2015 WL 5664259, at *4, 2015 U.S. Dist. LEXIS 128222, at *9 (E.D.N.Y. Sept. 23, 2015) (rejecting the argument that the "recording of mortgage assignment, on file with the New York Office of the City Register, violated § 1692e" because "Plaintiff cannot demonstrate that the recording was a 'communication' by a 'debt collector' within the purview of the FDCPA, much less that the recording was made in connection with the collection of a debt"); *Obanya v. Select Portfolio Servicing, Inc.*, No. 14-cv-5255, 2016 WL 11265648, at *4, 2016 U.S. Dist. LEXIS 113574, at *11 (E.D.N.Y. Aug. 23, 2016) ("The document that plaintiff alleges is a deceptive form to collect a debt is the standardized form to record the assignment of mortgages. As this form is not used to collect a debt, it is not a deceptive form for the purposes of the FDCPA." (citation omitted)), *report and recommendation adopted*, 2017 WL 253483, 2017 U.S. Dist. LEXIS 8275 (E.D.N.Y. Jan. 20, 2017).[10] Since the AOM, as alleged, was not a communication in connection with the collection of the debt, Plaintiff's § 1692c claim fails.

---

[9] Insofar as she claims that the statements violated § 1692e as false, deceptive, or misleading, the claim also fails because her Complaint does not identify any material misstatement or omission. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018) (holding that "statements must be materially false or misleading to be actionable" under § 1692e).

[10] *See also Dixon v. Stern & Eisenburg, PC*, 652 F. App'x 128, 132 (3d Cir. 2016) (rejecting argument that the "act of recording the mortgage assignments" violated the FDCPA under the circumstances of the case because there was no "showing that the recording was otherwise used in connection with a further effort to collect on a debt"); *Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1309–10 (M.D. Fla. 2017) (ruling that the plaintiff had

### b. Section 1692e Claim Against Ocwen

To the extent Plaintiff claims that Ocwen is liable under § 1692e for "fail[ing] to identify Plaintiff's current creditor, or that there was no creditor," (Dkt. No. 1, ¶ 68), that claim fails for the reasons discussed above.

Plaintiff also alleges that "Defendants violated 15 U.S.C. § 1692e(11) where the AOM failed to disclose that the debt collector is attempting to collect a debt as is required for the initial written communication, and failed to disclose that the communication is from a debt collector as is required of each subsequent communication." (Dkt. No. 1, ¶ 68). Section 1692e(11) imposes liability on a debt collector: (i) for the "failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose"; and (ii) for "the failure to disclose in subsequent communications that the communication is from a debt collector."

Many courts in this Circuit have held that the assignment of a mortgage and its recording under similar circumstances do not support a claim under § 1692(e)(11).[11] For one, the assignment and its recording are not an "initial communication" sent to the debtor. *See, e.g.*, *George v. Nationstar Mortg., LLC*, No. 16-cv-261, 2017 WL 3316065, at *9 n.8, 2017 U.S. Dist. LEXIS 122100, at *25 n.8 (E.D.N.Y. Aug. 2, 2017) (rejecting the argument that a recorded mortgage assignment was "directed to the consumer," and concluding that it was not an initial communication under § 1692e(11)); *Antoine v. CitiMortgage, Inc.*, No. 15-cv-5309, 2017 WL

---

not plausibly alleged that a "recorded assignment of mortgage" was a communication in connection with the collection of a debt under § 1692c.

[11] Courts in other circuits have reached similar conclusions. *See, e.g.*, *Thomas v. Trott & Trott PC*, No. 10-cv-13775, 2011 WL 576666, at *6 n.3, 2011 U.S. Dist. LEXIS 12963, at *16–17 (E.D. Mich. Feb. 9, 2011) (holding that "preparation and filing of an assignment of mortgage does not constitute false, deceptive, or misleading representation or means in connection with the collection of any debt" under § 1692e).

1133354, at *4, 2017 U.S. Dist. LEXIS 43484, at *10 (E.D.N.Y. Mar. 24, 2017) ("The Court fails to see how the mere assignment of a mortgage—even if notification of the assignment is sent to the debtor—can constitute an initial communication under the FDCPA.").[12] More generally, as discussed above, courts have held that the recording of a mortgage assignment is not a "communication," let alone a "subsequent communication[]," under § 1692e. *See, e.g.*, *Araujo*, 2015 WL 5664259, at *4, 2015 U.S. Dist. LEXIS 128222, at *9. Lastly, Plaintiff has not plausibly alleged any fact from which the Court could infer that the recording of the mortgage assignment was materially false, deceptive, or misleading to trigger liability under § 1692e.[13]

## III. MCCABE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On October 1, 2018, the McCabe Defendants moved to dismiss the Complaint under Rule 12(b)(6) or, in the alternative, moved for summary judgment under Rule 56. (Dkt. No. 15). They filed a statement of material facts, (Dkt. No. 15-1), as required by Local Rule 7.1(a)(3), and they served Plaintiff with a "Notice of Consequences of Failing to Respond to Summary Judgment Motion," (*see* Dkt. No. 15-5), as required by Local Rules 7.1(a)(3) and 56(2). Despite this notification, Plaintiff did not file a response to the statement of material facts; instead, she has decided to "stand[] on her Complaint at this juncture." (Dkt. No. 19, at 4). Plaintiff did so at her peril, however. This District's Local Rules clearly underscore that the "Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the

---

[12] *See also Rodriguez v. Wells Fargo Bank*, No. 15-cv-7265, 2017 WL 1040729, at *7, 2017 U.S. Dist. LEXIS 23388, at *18 (E.D.N.Y. Feb. 16, 2017) (finding that the recorded assignment of mortgage "cannot be plausibly construed as an 'initial communication' to Plaintiff," as it was "nothing more than a formal recording of an assignment" and "asked nothing of Plaintiff"), *report and recommendation adopted*, 2017 WL 1040401, 2017 U.S. Dist. LEXIS 38103 (E.D.N.Y. Mar. 16, 2017); *cf. Hoo-Chong v. CitiMortgage, Inc.*, No. 15-cv-4051, 2017 WL 1232506, at *4, 2017 U.S. Dist. LEXIS 50526, at *10 (E.D.N.Y. Mar. 31, 2017) (holding that "[n]either the assignment itself nor the recording of the assignment" was an "initial communication with a consumer in connection with the collection of any debt" (quoting § 1682g)).

[13] Plaintiff conclusorily alleges that "New Century had no legal capacity, either by its officer, nominee, agent, or by any so-called attorney in fact, to execute the AOM on August 11, 2017." (Dkt. No. 1, ¶ 25). Yet she does not "impugn the AOM's validity." (*Id.*). Based on these allegations, the Court need not address the AOM's validity.

opposing party does not specifically controvert." L.R. 7(a)(3) (emphasis omitted). Accordingly, the Court will accept the McCabe Defendants' statement of material facts as true where appropriate, supported by the record, and unchallenged by Plaintiff. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (explaining that "a party faced with a summary judgment motion may not rest upon the mere allegations or denials of the party's pleading and that if the party does not respond properly, summary judgment, if appropriate, shall be entered against him" (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988))).

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where the plaintiff proceeds pro se, the Court must read her submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

## B.     Factual Record

On June 23, 2006, the Osterhoudts borrowed $165,600 from New Century; the loan is evidenced by the note attached to the affidavit of Melissa A. Sposato.[14] (Dkt. No. 15-3, at 7–11). The note, which was endorsed in blank by New Century, was secured by a mortgage on the Osterhoudts' property at 40 Sunnybrook Circle in Highland, New York. (*Id.* at 11, 13–29). The Mortgage was recorded with the Ulster County Clerk on July 6, 2006. (*Id.* at 94). In May 2011, Ocwen began servicing the loan. (*See id.* at 51). The Osterhoudts defaulted on the loan after failing to make a payment due on March 1, 2017 and subsequent payments due thereafter. (*See id.*).

Following default, McCabe was retained to start a foreclosure proceeding against the property. (*Id.* ¶ 9, at 2). McCabe sent the Osterhoudts a notice, dated July 19, 2017, stating that McCabe had been retained to collect on the past-due debt and providing them with certain information about the debt, including the amount due. (*Id.* at 39–41). The notice identified Deutsche Bank as the creditor to whom the debt was owed. (*Id.* at 39). The notice stated that McCabe would "obtain verification of the debt . . and mail such verification" to Plaintiff if she notified McCabe in writing within thirty days that she disputed the debt. (*Id.*). On July 28, 2017,

---

[14] Sposato bases her affidavit on her "own personal knowledge derived from [her] representation of Deutsche Bank . . . in the foreclosure case filed in the Supreme Court of New York, County of Ulster, . . . as well as from [her] review of the McCabe Firm's records and files concerning the Foreclosure and the complaint file[d] by Anne Marie Tardi-Osterhoudt." (Dkt. No. 15-3, ¶ 1). But knowledge derived from representing a client or reviewing a complaint is not personal knowledge of the underlying facts (other than facts regarding the representation). *Wiwa v. Royal Dutch Petroleum Co.*, No. 01-cv-1909, 2006 WL 2637836, at *3, 2006 U.S. Dist. LEXIS 65601, at *8–9 (S.D.N.Y. Sept. 12, 2006) ("A witness has personal knowledge of an event if he or she has directly perceived the event through one of the five senses. A witness who has knowledge of an event only by virtue of what he or she has read or heard does not have personal knowledge of the event."); *see also Adamson v. Miller*, No. 10-cv-2300, 2018 WL 4964099, at *6, 2018 U.S. Dist. LEXIS 177105, at *18 (E.D.N.Y. Oct. 15, 2018) ("Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006))). Besides the documentary evidence attached to the affidavit, the Court will only consider those assertions by Sposato that can genuinely be derived from her personal knowledge. *See* Fed R. Civ. P. 56(c)(4).

Plaintiff sent a written claim dispute and request for verification of the debt to McCabe by certified mail. (*Id.* at 46–47). Sposato asserts, without supporting documentation, that "McCabe informed Ocwen of the verification request and learned that Ocwen planned to respond to it." (*Id.* ¶ 16, at 3).

Plaintiff alleged that McCabe "did not validate the debt or obtain and mail verification:" McCabe did not, in fact, respond to Plaintiff. On August 30, 2017, Ocwen sent a letter to Plaintiff thanking her for her "recent inquiry" about the loan and assuring Plaintiff that it would endeavor to respond within a month. (*Id.* at 49). The letter does not mention McCabe, or otherwise reference Plaintiff's written dispute letter to McCabe. (*Id.*). Ocwen next wrote Plaintiff on September 14, 2017, (*id.* at 51–52), responding to her "recent communications" regarding her account and her concerns "around the validation of the debt." (*Id.* at 51). Ocwen attached copies of the loan and mortgage documents, along with payment history records. (*Id.* at 53–91). Among other information, the response identified the "entity that currently owns the account and holds the note" as "Deutsche Bank National Trust Company, as trustee for the registered holder of Morgan Stanley ABS Capital Inc. Trust 2007-HE1 Mortgage pass through certificates, Series 2007-HE1." (*Id.* at 51). Ocwen stated that it "has investigated the allegations regarding the validation of the debt, foreclosure and credit reporting and found no evidence that any errors were made." (*Id.* at 52). The letter does not mention McCabe.

On August 25, 2017, after Plaintiff sent her verification request but before Ocwen responded, McCabe filed an assignment of mortgage with the Ulster County Clerk. (*Id.* at 93–94). According to assignment of mortgage, which was executed and notarized on August 11, 2017, the assignor, "New Century Mortgage Corporation by its attorney in fact Ocwen Loan Servicing, LLC," assigned the Osterhoudts' mortgage to the assignee, "Deutsche Bank National

Trust Company, as Trustee for the Registered Holder of Morgan Stanley ABS Capital I Inc. Trust 2007-HE1 Mortgage Pass-Through Certificates, Series 2007-HE1 at c/o Ocwen Loan Servicing, LLC." (*Id.* at 94 (all-letter capitalization omitted)).

On November 20, 2017, after securing a copy of the Osterhoudts' mortgage note and ensuring that it was in the possession of Deutsche Bank, McCabe filed a foreclosure case in New York Supreme Court, Ulster County, on behalf of Deutsche Bank. (*Id.* ¶¶ 1, 23, at 1, 4). The foreclosure complaint was signed by Defendant Hamlani, who "had no further role in the Foreclosure." (*Id.* ¶ 24, at 4). The foreclosure continues as an active, contested matter. (*Id.* ¶ 25).

### C. Discussion

#### 1. Section 1692e Claim

Plaintiff claims that all Defendants violated § 1692e when they "pursu[ed] collection of the debt while attempting to evade the Plaintiff's right [under § 1692g(a)(2)] to the name of the creditor whom the debt is owed." (Dkt. No. 1, ¶ 68). As discussed above, the Complaint's allegations do not plausibly suggest that Defendants provided the wrong name—as a matter of law, Deutsche Bank was properly named as a creditor in the July 19, 2017 notice that Plaintiff received. The factual record that the Court may consider on summary judgment does not alter that conclusion. Accordingly, the McCabe Defendants, like Defendants Ocwen and Deutsche Bank, cannot be liable under § 1692e for naming Deutsche Bank as the creditor to whom Plaintiff's debt was due.

Similarly, Plaintiff does not distinguish between Defendants in claiming that they all violated § 1692e(11) by filing the AOM without the requisite FDCPA disclosures. (Dkt. No. 1, ¶ 68). Again, it makes no difference whether the Court confines its review to the Complaint only or considers the factual record submitted by the McCabe Defendants. As a matter of law, neither the AOM nor its recording with the County Clerk is an initial or subsequent communication sent

to a debtor or third parties in connection with collection of debt. (*See supra* Section IIC2). Thus, no liability can attach to the McCabe Defendants for recording the assignment.

## 2.     Section 1692c Claim

Plaintiff's claim that McCabe violated § 1692c(a) and (b) fails for the same reasons that it failed against Ocwen: the AOM and its recording are not a communication in connection with the collection of a debt.

The Complaint asserts an additional § 1692c(b) against the McCabe Defendants—that they unlawfully "sen[t] the November 20, 2017 communication in connection with the collection of the debt to the Ulster County clerk." (Dkt. No. 1, ¶ 67). This allegation refers to the McCabe Defendants' filing of a foreclosure action in state court on behalf of Deutsche Bank. (Dkt. No. 15-3, ¶¶ 1, 23, at 1, 4). As the Supreme Court reiterated this past term, "foreclosure is a means of collecting a debt." *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1036 (2019); *accord Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 82 (2d Cir. 2018) (holding that "a foreclosure action is an 'attempt to collect a debt' as defined by the FDCPA"). Therefore, communications with third parties about foreclosure of a mortgage securing a debt are communications "in connection with the collection of [the] debt" under § 1692c(b).

That does not end the inquiry, however, because the FDCPA provides exceptions to liability in certain circumstances, for example when the third-party communications are made with "the express permission of a court of competent jurisdiction" or are "reasonably necessary to effectuate a postjudgment judicial remedy." 15 U.S.C. § 1692c(b); *see Johnson-Gellineau*, 2019 WL 2647598, at *10, 2019 U.S. Dist. LEXIS 108025, at *32 ("Although *Cohen* held that conduct by attorneys representing creditors in foreclosure actions *can* violate the FDCPA, it did not hold that the mere filing of documents in connection with a foreclosure action violates the FDCPA."). In *Heintz v. Jenkins*, the Supreme Court read the next subsection's bar on

communications to have an "implicit" exception. *See* 514 U.S. 291, 296–97 (1995). The Court observed that "it would be odd if the [FDCPA] empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." As the Court explained, it is "not necessary to read § 1692c(c) in that way—if only because that provision has exceptions that permit communications 'to notify the consumer that the debt collector or creditor may invoke' or 'intends to invoke' a 'specified remedy' (of a kind 'ordinarily invoked by [the] debt collector or creditor')." *Id.* (alteration in original) (quoting § 1692c(c)(2), (3)). A plausible reading of these exceptions is that they implicitly "authorize the actual invocation of the remedy that the collector 'intends to invoke.'" *Id.*

"Courts in this and other circuits, relying on *Heintz*, have similarly found that communications made in the context of foreclosure proceedings that would otherwise violate § 1692c if made to a third party do not run afoul of the FDCPA." *Johnson-Gellineau*, 2019 WL 2647598, at *10, 2019 U.S. Dist. LEXIS 108025, at *35 (collecting cases). One such court held that the filing of a foreclosure action was "a necessary precedent to reaching a postjudgment judicial remedy, so communications with a court that are necessary to maintain that foreclosure action do not violate § 1692c(b)." *Marino v. Nadel*, No. 17-cv-2116, 2018 WL 4634150, at *3, 2018 U.S. Dist. LEXIS 166168, at *8–9 (D. Md. Sept. 27, 2018), *aff'd*, No. 18-2283, 2019 WL 1473931, 2019 U.S. App. LEXIS 9790 (4th Cir. Apr. 3, 2019).

This Court has not found any authority for the proposition that § 1692c(b) categorically bars a creditor's lawyers from filing a foreclosure proceeding to collect on a debt. Not only can mortgage foreclosure be comfortably squared with the provision's exceptions to liability, but Plaintiff's theory is in tension with other provisions of the FDCPA that contemplate mortgage

foreclosure as conduct that must comply with the statute's strictures. *See* 15 U.S.C.

§ 1692i(a)(1); *Johnson-Gellineau*, 2019 WL 2647598, at *12, 2019 U.S. Dist. LEXIS 108025, at

*37 (noting that "the Second Circuit in Cohen clearly contemplated the continuing validity of

creditors pursuing foreclosure proceedings in holding that conduct in the context of those

proceedings must comply with the FDCPA"). The McCabe Defendants, therefore, cannot be

liable under § 1692c(b) merely for communicating with the state court in connection with their

foreclosure action against Plaintiff's property.

### 3. Section 1692g Claim

Plaintiff claims that the McCabe Defendants, in violation of § 1692g(b), "did not validate

the debt or obtain and mail verification, and then *subsequently* failed to cease debt collection

activities." (Dkt. No. 1, ¶ 69). Section § 1692g(b) provides in relevant part:

> If the consumer notifies the debt collector in writing within the
> thirty-day period described in subsection (a) that the debt, or any
> portion thereof, is disputed, or that the consumer requests the name
> and address of the original creditor, the debt collector shall cease
> collection of the debt, or any disputed portion thereof, until the debt
> collector obtains verification of the debt or a copy of a judgment, or
> the name and address of the original creditor, and a copy of such
> verification or judgment, or name and address of the original
> creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). It is undisputed that Plaintiff sent a written claim dispute and request for

verification of the debt to McCabe by certified mail on July 28, 2017. (*See* Dkt. No. 15-3, at 46–

47). The record further shows that Ocwen, not McCabe, responded to Plaintiff's verification

request with information about the debt on September 14, 2017. The only alleged activity that

occurred in the intervening period was the recordation of the AOM on August 25, 2017, but, as

the Court discussed above, that activity does not constitute debt collection. Therefore, Plaintiff's

claim necessarily stands or falls on resolving whether Ocwen's September 14, 2007 response satisfies § 1692g(b)'s verification and mailing requirements.[15]

The McCabe Defendants assert that they relayed the verification request to Ocwen and "learned that Ocwen planned to respond." (*See id.* Dkt. No. 15-3, ¶ 16, at 3). The McCabe Defendants maintain that they "complied with the statute *to the letter* until, perhaps, the final four words of the [quoted provision] indicating that the reply obligation is satisfied once the verification is mailed to the consumer '*by the debt collector*.'" (Dkt. No. 15-2, at 20 (quoting § 1692g(b))). And they argue that it "is not at all clear from the syntax of the provision that the ministerial act of mailing the verification by the debt collector is intended to be [a] substantive requirement." (*Id.* at 20–21). They submit that "the servicer, having intimate familiarity with the loan, would be the most apt party to respond to a consumer's inquiry and verify the debt." (*Id.* at 21). Lastly, they contend that the "slight deviation from the letter of Section 1692g(b) was not material, and did not render invalid the otherwise more than adequate Verification Response [McCabe] brought about by way of the servicer." (*Id.*).

The Court disagrees. While Ocwen did mail Plaintiff verification of the debt, § 1692g(b) "serves as a check on the debt-collection agency." *Walton v. EOS CCA*, 885 F.3d 1024, 1028 (7th Cir. 2018). Section 1692g(b) requires that a debt collector cease collection of the debt "until the *debt collector* obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer *by the debt collector*." 15 U.S.C. § 1692g(b) (emphasis added). The McCabe Defendants have not cited any authority for their position that McCabe's relay of Plaintiff's verification request to a mortgage servicer satisfied McCabe's obligations under

---

[15] Because the Complaint does not acknowledge receipt of Ocwen's response and Plaintiff failed to respond to the McCabe Defendants' statement of material facts, there are no allegations—let alone evidence—before the Court pointing out deficiencies in the contents of Ocwen's response to the verification request. In these circumstances, the Court assumes, without deciding, that Ocwen's response contained the requisite information and documents.

§ 1692g(b). The purpose of verification is to "eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Stonehart v. Rosenthal*, No. 01-cv-651, 2001 WL 910771, at *6, 2001 U.S. Dist. LEXIS 11566, at *23 (S.D.N.Y. Aug. 13, 2001) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1998)). In light of the plain language of § 1692g(b), and the fact that "the FDCPA must be construed liberally to effectuate its stated purpose," *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 214 (2d Cir. 2018), the Court declines, on this record, to grant summary judgment on Plaintiff's § 1692g(b) claim against McCabe.[16]

## IV. LEAVE TO AMEND

In general, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also* Fed. R. Civ. P. 15 (a)(2) ("The court should freely give leave when justice so requires."). Further, district courts should frequently provide leave to amend before dismissing a pro se complaint if amendment would not be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Here, however, Plaintiff's theory of liability against Deutsche Bank is solely premised on it not being a creditor, which is incorrect as a matter of law. Further, given the incontrovertible evidence that Ocwen began servicing her account before she defaulted on the loan, Ocwen, cannot qualify as a "debt collector" under the FDCPA. Plaintiff's claims against the McCabe Defendants, other than the § 1692g(b) claim against McCabe, similarly fail as a matter of law on summary judgment, regardless of the sufficiency of the Complaint's allegations. Therefore, because any amendments by Plaintiff would be futile, the Court denies leave to amend.

---

[16] There is no allegation that Defendant Hamlani had any involvement in McCabe's alleged violation of § 1692g(b). There is no evidence that Hamlani did anything beyond signing the foreclosure complaint.

V.    **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendants Ocwen and Deutsche Bank's motion to dismiss (Dkt. No.

13) is **GRANTED**; and it is further

**ORDERED** that the McCabe Defendants' motion for summary judgment (Dkt. No. 15)

is **DENIED** as to Plaintiff's claim under 15 U.S.C. § 1692g(b) as to McCabe; and is otherwise

**GRANTED**; and it is further

**ORDERED** that Defendants Ocwen, Deutsche Bank and Hamlani are **DISMISSED**; and

it is further

**ORDERED** that the Clerk of Court shall serve a copy of this Memorandum-Decision and

Order in accordance with the Local Rules along with copies of the unpublished decisions cited

herein.

**IT IS SO ORDERED.**

Dated: September 6, 2019
          Syracuse, New York

Brenda K. Sannes
U.S. District Judge